TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00784-CV






Travis Central Appraisal District and Travis County Appraisal

Review Board, Appellants


v.


Marshall Ford Marina, Inc.; S & W Marina, LLP; Joe J. Higginbotham Inc., 

d/b/a Cap Co.; Molecular Imprints, Inc.; AR & JR Radio Towers #1 LP;

Danly Properties, Inc.; Unique Cabinets, Inc.; 1080 Inc.; Breed & Co.;

and Land Rover Austin LP, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. GN401350, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Texas law is well established that the remedies available to taxpayers under the Texas
Tax Code are exclusive. Tex. Tax. Code Ann. § 42.09 (West 2008); (1) see, e.g., Cameron Appraisal
Dist. v. Rourk, 194 S.W.3d 501, 502 (Tex. 2006); Gregg County Appraisal Dist. v. Laidlaw Waste
Sys., Inc., 907 S.W.2d 12, 16 (Tex. App.--Tyler 1995, writ denied); Scott v. Harris Methodist HEB,
871 S.W.2d 548, 550 (Tex. App.--Fort Worth 1994, no writ); Watson v. Robertson County
Appraisal Review Bd., 795 S.W.2d 307, 310 (Tex. App.--Waco 1990, no writ). The question
presented in this appeal is whether a taxing authority, as opposed to a taxpayer, is subject to the same
exclusive remedies as provided by statute. Because we conclude that it is, we affirm the district
court's judgment.


BACKGROUND


 This appeal concerns a challenge to ad valorem taxes for tax year 2003 and arises
from property tax protests brought by various taxpayers, including appellees Marshall Ford Marina,
Inc.; S & W Marina, LLP; Joe J. Higginbotham Inc., d/b/a Cap Co.; Molecular Imprints, Inc.;
AR & JR Radio Towers #1 LP; Danly Properties, Inc.; Unique Cabinets, Inc.; 1080 Inc.;
Breed & Co.; and Land Rover Austin LP, (2) against the Travis Central Appraisal District
(the "District") and decided by the Travis County Appraisal Review Board (the "Board"). (3) In the
spring of 2003, the District issued tax notices to the Taxpayers notifying them of their appraised
property values for ad valorem tax purposes. The Taxpayers did not file a protest as authorized by
the tax code. See Tex. Tax Code Ann. § 41.41 (West 2008) (authorizing taxpayer protest). The
Board approved the 2003 appraised values for inclusion on the 2003 appraisal roll on July 24, 2003. 
That same day the District's chief appraiser certified the 2003 appraisal roll to the taxing units.

 After the appraisal roll was certified by the Board, the various Taxpayers filed
amnesty rendition statements as allowed under former subsection 22.23(c) of the tax code. (4) See Act
of May 31, 2003, 78th Leg., R.S., ch. 1173, § 6, 2003 Tex. Gen. Laws 3353, 3355-56 (expired
Jan. 1, 2005). After receipt of the Taxpayers' amnesty rendition statements, the Board on
January 6, 2004, issued notices ("First Appraisal Notices") proposing changes to the 2003 appraised
values of the Taxpayers' business personal property. The First Appraisal Notices allowed each
taxpayer to protest the proposed change in value by filing a written protest within 30 days, which the
Taxpayers did. See Tex. Tax Code Ann. § 41.41 (West 2008). In their notices of protest, the
Taxpayers alleged that appellants' actions were unlawful and outside the provisions of the tax code,
the actions of the chief appraiser and the Board in increasing the value of the Taxpayers' business
personal property after the appraisal roll had been certified were without legal authority, and
appellants violated due process by failing to give proper notice and an opportunity to be heard before
approving the value increase. The record reflects that the District did not amend the First Appraisal
Notices in response to the Taxpayers' protests or otherwise request a continuance to do so.

 The Board held multiple hearings on the Taxpayers' protests on February 10th,
March 9th, and June 11th, 2004 ("First Protest Hearings"). The transcript from the February 10th
hearing demonstrates the Taxpayers' arguments. (5) At that hearing, the Taxpayers argued that the
District could not alter the appraised values of the Taxpayers' property after the appraisal roll had
already been certified. See id. § 25.25 (West 2008). The Taxpayers further argued that, even if the
proposed increase in value was the result of omitted property, the District had failed to comply with
the statutory prerequisites for adding omitted property to the appraisal roll. See id. §§ 25.19
(requiring notice), .21 (omitted property) (West 2008). In addition, the Taxpayers argued that the
District failed to demonstrate that the proposed increase in appraised value was the result of
omitted property.

 After the First Protest Hearings, the Board issued final orders ("First ARB Orders")
in favor of the Taxpayers setting the appraised value of the Taxpayers' property at the original
2003 appraised values. The First ARB Orders do not state the grounds on which the Board ruled in
the Taxpayers' favor. Although section 42.02 of the tax code authorized the chief appraiser, upon
written approval of the District's board of directors, to appeal the First ARB Orders to district court,
the chief appraiser did not appeal. (6)

 Thereafter, the Taxpayers received another 2003 Notice of Appraised Value
("Second Appraisal Notices"). The Second Appraisal Notices were issued for the same property,
at the same location, and for the same tax year that the District previously contended was omitted
from the appraisal roll during the First Protest Hearings. Rather than increasing the entire value of
the Taxpayers' property for 2003, the Second Appraisal Notices established supplemental accounts
only for the increase in value that the District contended was omitted property and had previously
tried to add in the First Appraisal Notices. In a cover letter that accompanied the Second Appraisal
Notices, the District's director of business personal property stated:


 The enclosed 2003 Notice of Appraised Value is in reference to omitted business
personal property that has been supplemented to the Travis Central Appraisal District
(TCAD) 2003 appraisal records in response to a 2003 special amnesty rendition
submitted by the above referenced account. TCAD had previously delivered
notification of having added this omitted property in an appraisal review board
decision letter informing the business or its registered agent of the increase in value
on the main account . . . .


 A protest of that omitted property value increase was filed, and at the ensuing hearing 
the Travis County Appraisal Review Board determined that TCAD had not acted in
accordance with Section 25.21 of the Texas Property Tax Code on the appropriate
procedure to communicate the addition of omitted property, resulting in the value
being set back to the appraised value reflected on the account's original 2003 Notice
of Appraised Value. The enclosed Notice of Appraised Value is a supplemental
account that will be active for 2003 only, and represents the amount of the value
reduction arrived at in that hearing.


 The Taxpayers protested the chief appraiser's proposed actions as authorized by
statute. See id. § 41.41 (allowing taxpayer protest). Additional hearings were held before the Board
on June 1, 2004, June 11, 2004, and February 8, 2005 ("Second Protest Hearings"). After the
Second Protest Hearings, the Board issued final orders ("Second ARB Orders") in favor of the
District increasing the appraised values of the Taxpayers' business personal property by the amounts
proposed by the District in the Second Appraisal Notices. The Taxpayers appealed the Second ARB
Orders to the district court seeking reversal of those orders and attorney's fees.

 After a bench trial, the district court rendered judgment in favor of the Taxpayers. 
In its final judgment, the district court found "that the First ARB Orders were final and dispositive
of all issues raised at the First Protest Hearings, including the conclusion that there was no property
omitted from the appraisal roll." The judgment further stated that the "Second Appraisal Notices
are null and void pursuant to section 25.25 of the Tax Code." (7) The district court also issued findings
of fact and conclusions of law. In relevant part, the district court found:


 2. In the spring of 2003, the [District] appraised the business personal property
of the [Taxpayers] and issued Notices of Appraised Property Value for
2003 to the [Taxpayers].


 3. The 2003 appraised values of the [Taxpayers'] business personal property
were approved by the [Board] on July 24, 2003.


 4. The chief appraiser of [the District] certified the 2003 appraisal roll to the
taxing units on July 24, 2003.


 5. [The District] sent a form letter to all owners of taxable business personal
property in Travis County, including the [Taxpayers], regarding Senate Bill
340, now section 22.23(c) of the Texas Tax Code.



 6. After the [Board] approved and certified the 2003 values of the [Taxpayers']
personal property, the [Taxpayers] submitted amnesty renditions to [the
District].


 7. After receiving the [Taxpayers'] amnesty renditions, [the District] issued
corrected notices of value for 2003, (the First Appraisal Notices).


 8. In the First Appraisal Notices, the column entitled "2003 Previous Value"
contains the 2003 appraised value of the [Taxpayers'] property as originally
certified by the [Board] and the column entitled "2003 Corrected Value"
represents the original certified values plus the increases over and above the
previously certified values for what [the District] believed was omitted
property revealed from the [Taxpayers'] amnesty renditions.


 9. The [Taxpayers] protested [the District's] First Appraisal Notices, i.e. the
corrected notices of 2003 value, and their representatives appeared at formal
hearings before the [Board] on February 10, March 9, and June 11, 2004 (the
First Protest Hearings).


 10. The transcript from the February 10, 2004 First Protest Hearing represents
both the [Taxpayers'] and the [District's] positions for all of the First Protest
Hearings.


 11. During the First Protest Hearings, the [Taxpayers] contended, among other
things, that they had no omitted property from the appraisal roll and that [the
District] had no authority to increase the appraised values of their property
over and above the previously 2003 certified values as such increases were
prohibited by section 25.25 of the Tax Code.


 12. After the First Protest Hearings concluded, final orders were issued pursuant
to section 41.47 of the Tax Code, (the First ARB Orders).


 13. The First ARB Orders did not increase the values of the protested accounts
over and above the previously certified 2003 values and thus did not add the
value of what [the District] contended was omitted property of the
[Taxpayers] to the 2003 appraisal roll.


 14. Neither the Chief Appraiser nor [the District] appealed the First ARB Orders
to district court pursuant to section 42.02 of the Tax Code.




 15. The First ARB Orders were dispositive of all issues raised during the
First Protest Hearings, including the issue that there was no omitted property
from the appraisal roll.


 16. After the First ARB Orders were issued, [the District] issued new appraisal
notices to the [Taxpayers], (the Second Appraisal Notices).


* * *



 19. The values contained in the Second Appraisal Notices were the exact same
values that [the District] previously sought to add to the appraisal roll, as
omitted property, in the First Appraisal Notices.


* * *



 21. [The District] asserted the same position in the First Protest Hearings that it
did in the Second Protest Hearings, which was that the [Taxpayers] had
omitted property from the 2003 appraisal roll.


* * *



 23. After the Second Protest Hearings, the [Board] ruled in favor of [the District]
and against the [Taxpayers] and issued final orders (the Second ARB Orders),
which added value for what [the District] contended was omitted
property and that the [Board] previously refused to add during the
First Protest Hearings.


 The district court also entered the following conclusions of law relevant to
this appeal:


 1. The First ARB Orders were dispositive of all issues raised during the First
Protest Hearings, including the issue that there was no omitted property from
the appraisal roll.


 2. The Second Appraisal Notices are null and void pursuant to section 25.25 of
the Tax Code.


 3. [The District] had no legal authority to issue the Second Appraisal Notices.


 4. The only available remedy to [the District] for redress of the First ARB
Orders was an appeal to district court pursuant to 42.02 of the Tax Code.


 5. In light of the detailed nature of the procedures prescribed by the Legislature,
[the District] had no implied authority under the Tax Code to issue the
Second Appraisal Notices.


 6. Since [the District] had no lawful authority to issue the Second Appraisal
Notices, the values contained in the Second ARB Orders are null and void.


 This appeal followed.


DISCUSSION


 Appellants raise seven issues challenging the district court's judgment. (8) In these
issues, appellants argue that they were not required to appeal the First ARB Orders and that they
were permitted to issue new appraisal notices to correct the notice defects alleged in the Taxpayers'
protests and to add the Taxpayers' omitted property to the appraisal roll. The Taxpayers counter that
the First ARB Orders were final orders and were dispositive of all issues raised at the First Protest
Hearings and that, in order to challenge the First ARB Orders, appellants were required to appeal
those orders to the district court. Because we conclude that the question of appellants' available
remedy is dispositive of this appeal, we turn to that issue.


Available Remedy

 In their fifth issue, appellants complain that the district court erred in concluding that
the only remedy available to the District for redress of the First ARB Orders was an appeal to district
court pursuant to section 42.02 of the tax code. We review the district court's conclusions of law
de novo. See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 
Appellants argue that they were not required to pursue their available remedies under the tax code
and were authorized to issue new appraisal notices after the Board rendered the First ARB Orders
rejecting the District's proposed increases in property value. We disagree.

 In Cameron Appraisal District v. Rourk, the supreme court reaffirmed that the Texas
Tax Code provides detailed administrative procedures for those who would contest their property
taxes. 194 S.W.3d at 502. And the court reaffirmed that administrative decisions of an appraisal
review board are final if not appealed to the district court within 45 days. Id. (citing Tex. Tax Code
Ann. § 42.21(a) (West 2008) (9)).

 Here, it is undisputed that neither the District nor the Board appealed the First ARB
Orders as authorized in section 42.02 of the tax code as it existed at the time. See Tex. Tax Code
Ann. § 42.02, supra, note 6. Instead, appellants issued the Second Appraisal Notices in an attempt
to circumvent the Board's First ARB Orders, which denied the District's proposed increases to the
2003 appraised values of Taxpayers' business personal property. We conclude that the issuance of 

the Second Appraisal Notices was an impermissible collateral attack against the First ARB Orders,
which were final and appealable. See Tex. Tax. Code Ann. § 42.21(a) (petition for review must
be filed within 45 days of final order, otherwise appeal is barred); Hood v. Hays County,
836 S.W.2d 327, 329 (Tex. App.--Austin 1992, no writ) (finding that property owner who failed
to follow procedures in tax code could not collaterally attack decision of appraisal review board in
subsequent lawsuit).

 The plain language of section 42.02 of the tax code as it existed at the time authorized
the District's chief appraiser to appeal the First ARB Orders. The legislature thus provided
appellants with an exclusive remedy to challenge orders of the appraisal review board. See Tex. Tax
Code Ann. § 42.02 (providing right of appeal by chief appraiser); .09 (remedies under tax code are
exclusive); see also Rourk, 194 S.W.3d at 502 (remedies under tax code are exclusive); Laidlaw
Waste Sys., 907 S.W.2d at 16 (same); Scott, 871 S.W.2d at 550 (same); Watson, 795 S.W.2d at 310
(same). Because the legislature provided an exclusive remedy, appellants could not simply ignore
the First ARB Orders. See In re Ament, 890 S.W.2d 39, 41 (Tex. 1994) (where statute provides
exclusive remedy, that remedy must be followed); Dallas v. Wright, 36 S.W.2d 973, 974 (Tex. 1931)
(same). In order to challenge the First ARB Orders, appellants were required to appeal those
orders to district court as authorized in section 42.02 of the tax code. (10) See Tex. Tax Code
Ann. §§ 42.02, .09; Rourk, 194 S.W.3d at 502; Laidlaw Waste Sys., 907 S.W.2d at 16; Scott,
871 S.W.2d at 550; Watson, 795 S.W.2d at 310; see also Ament, 890 S.W.2d at 41; Dallas,
36 S.W.2d at 974. Having chosen to forego the exclusive remedy available under the tax code, we
conclude that appellants waived any error in the First ARB Orders and cannot now pursue an
impermissible collateral attack against those orders. (11) See Hood, 836 S.W.2d at 329-30. We
overrule appellants' fifth issue. Moreover, because the question of appellants' available remedy is
dispositive of this appeal, we decline to reach appellants' remaining issues.


CONCLUSION


 Having determined that appellants waived any error by failing to pursue the exclusive
remedy of appeal as authorized in the tax code, we affirm the district court's judgment.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

 Chief Justice Law not participating (12)

Affirmed

Filed: September 9, 2009

1. For convenience, we cite to the current version of the tax code unless otherwise noted.
2. We refer to the appellees collectively as the "Taxpayers" unless otherwise noted. The
Taxpayers are ten businesses who own business personal property in Travis County. The
record reflects that Hardin Interests, Inc.; Student Legacy, LP; and NFP Insurance Services, Inc.,
three taxpayers who were originally named in the suit against the District and the Board,
nonsuited their claims prior to trial.
3. We refer to the District and the Board collectively as the "appellants."
4. As it existed at the time, subsection 22.23(c) provided:


 If before December 1, 2003, a person files a rendition statement for the 2003 tax year
that provides the information required by Section 22.01 as that section exists on
January 1, 2004, and, as a result of that information, the chief appraiser discovers that
some or all of that person's tangible personal property used for the production of
income was omitted from the appraisal roll in one of the two preceding years,
the chief appraiser may not add the value of the omitted property to the 2001 or
2002 appraisal roll. This subsection expires January 1, 2005.


Act of May 31, 2003, 78th Leg., R.S., ch. 1173, § 6, 2003 Tex. Gen. Laws 3353, 3355-56 (expired
Jan. 1, 2005).
5. The parties stipulated at trial that the transcript of the February 10, 2004, hearing
represented the positions of all parties involved, including the Taxpayers, the District, and the Board.
6. At the time of the First ARB Orders, section 42.02, entitled "Right of Appeal by Chief
Appraiser," provided:


 On written approval of the board of directors of the appraisal district, the chief
appraiser is entitled to appeal an order of the appraisal review board determining:


 (1) a taxpayer protest as provided by Subchapter C, Chapter 41; or


 (2) a taxpayer's motion to change the appraisal roll filed under Section 25.25.


Act of May 17, 2001, 77th Leg. R.S., ch. 1430, § 32, sec. 42.02, 2001 Tex. Gen. Laws 5109, 5121
(codified as amended at Tex. Tax Code Ann. § 42.02 (West 2008)).
7. The district court declined to award attorney's fees to the Taxpayers, but the Taxpayers do
not raise that issue on appeal.
8. Specifically, appellants contend that the district court erred: (1) in finding that the First
ARB Orders were dispositive of all issues raised at the First Protest Hearings (Finding of Fact
No. 15); (2) in concluding that the First ARB Orders were dispositive of all issues raised at the
First Protest Hearings (Conclusion of Law No. 1); (3) in concluding that the Second Appraisal
Notices were null and void pursuant to section 25.25 of the tax code (Conclusion of Law No. 2);
(4) in concluding that the District had no legal authority to issue the Second Appraisal Notices
(Conclusion of Law No. 3); (5) in concluding that the only remedy available to the District was to
appeal the First ARB Orders (Conclusion of Law No. 4); (6) in concluding that the District had no
implied authority to issue the Second Appraisal Notices (Conclusion of Law No. 5); and (7) in
concluding that the values contained in the Second ARB Orders were null and void (Conclusion of
Law No. 6).
9. Section 42.21(a) has not been amended since the supreme court decided Cameron
Appraisal District v. Rourk, 194 S.W.3d 501, 502 (Tex. 2006).
10. To the extent appellants argue that they were entitled to issue the Second Appraisal
Notices to correct the notice defect alleged by the Taxpayers in the First Protest Hearings, this
argument is without merit. Had appellants wished to correct the alleged notice defect, they should
have requested a continuance or adjournment of the First Protest Hearings to do so. Moreover, even
if the notice was defective, the Board was required to determine the merits of the Taxpayers' protests
"on any other grounds of protest authorized"--including the Taxpayers' claim that they had no
omitted property. See Tex. Tax Code Ann. § 41.411(b) (West 2008); see also Midland Cent.
Appraisal Dist. v. Plains Mktg., L.P., 202 S.W.3d 469, 475-76 (Tex. App.--Eastland 2006, pet.
denied) (finding that issue had been presented to and decided by appraisal review board even though
taxpayer had not included issue in notice of protest and rejecting argument that taxpayer failed to
exhaust administrative remedies). Therefore, once the Board issued the First ARB Orders in favor
of the Taxpayers, those orders were final and subject to review only by way of appeal to district
court. See Tex. Tax Code Ann. §§ 42.02, .21 (West 2008). The issuance of the Second Appraisal
Notices was more than an attempt to correct the alleged notice defect; it was an end-run around the
effects of the First ARB Orders and the exclusive remedy of appeal provided in the tax code.
11. We likewise reject appellants' argument that this Court's decision in Mag-T, L.P. v. Travis
Central Appraisal District, 161 S.W.3d 617 (Tex. App.--Austin 2005, pet. denied), controls the
outcome of this appeal. In that case, the taxpayers filed a suit for declaratory judgment and
injunctive relief without filing a protest or otherwise exhausting their administrative remedies. 
See id. at 623. After initially granting a temporary restraining order, the district court dismissed the
lawsuit for lack of jurisdiction on the grounds that the taxpayers failed to exhaust their administrative
remedies. Id. at 623. Finding no exception for the taxpayers' failure to exhaust, this Court affirmed. 
Id. at 635. Unlike the circumstances presented in Mag-T, it is appellants, not the Taxpayers, who
have failed to follow the exclusive remedies set forth in the tax code.
12. Because former Chief Justice Law was originally assigned to author this opinion,
authoring duties were reassigned as of August 4, 2009.